Mohmed and Amina
NANLAWALA, Plaintiffs,

v.

JACK CARL ASSOCIATES, INC., et
al., Defendants.

No. 86 C 5343.

United States District Court,
N.D. Illinois, E.D.

Aug. 20, 1987.

Leslie A. Blaue, Philip A. Powers, Ruberry, Phares, Abramson & Fox, Chicago, for plaintiffs.

William G. Schopf, Jr., Steven A. Weiss, Mindy S. Trossman, Isham, Lincoln & Beale, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiffs Mohmed ("Mike") and Amina Nanlawala bring this action against defendants Jack Carl Associates, Inc., a futures commission merchant, and Jeff Atkins and Neal Sears, two employees of Jack Carl. Plaintiffs seek damages under a variety of theories for losses they sustained while trading in commodity futures in two accounts with Jack Carl, a discount trading account ("the Discount Account") and a second account which began as a discount account but was changed to a full service account ("the Sears Account").[1] Defendants now move for summary judgment as to Counts III and VI and to dismiss the other six counts. Plaintiffs move for summary judgment as to all claims involving the Discount and Sears Accounts.

### FACTS

#### A. The Discount Account

Plaintiff Mohmed Nanlawala opened the Discount Account, account number 94WS46137, in July, 1985. Between July, 1985, and March, 1986, Nanlawala deposited money into this account on several occasions in response to margin calls by Jack Carl. On the morning of March 19, 1986, Nanlawala held several futures contracts in lumber and orange juice in the Discount Account. At approximately 7:30 a.m. that day, Nanlawala received a call from Tracy Schafroth, an order desk supervisor at Jack Carl, who told him that there was a margin call on his account of $20,000. Nanlawala told Schafroth that he had placed sell or-

---

**1.** Plaintiffs also originally sought damages in connection with a third account of Jack Carl ("the Atkins Account"), but now agree to dismiss with prejudice all claims as to the Atkins Account. (Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 2.) Therefore Counts III and IV must be dismissed, as well as those claims relating to the Atkins Account in Counts V, VII, and VIII.

ders on a number of contracts which would be executed if the market price on those contracts reached a certain level and that the revenue from those sales would cover the margin requirement. Schafroth discussed Nanlawala's account with Jeffrey Kerr, general manager of Jack Carl. Schafroth called Nanlawala again at approximately 8:30 a.m. and told Nanlawala that the Jack Carl management wanted "stop orders," placed on Nanlawala's contracts so that they would be sold automatically if the market dropped to a level where Nanlawala's account would begin to run a deficit. During this conversation and a subsequent conversation at approximately 8:42 a.m. Nanlawala attempted to persuade Schafroth and his supervisor, Richard Schwartz, not to place the "stop orders," and promised to bring $20,000 in cash to Jack Carl's offices later that same day to cover the margin call, but the decision was made at Jack Carl to place those orders nevertheless.[2] Jack Carl placed those stop orders on Nanlawala's contracts before the markets opened. When the markets opened, both lumber and orange juice went down immediately. Nanlawala's lumber and orange juice contracts were all sold, resulting in losses to plaintiffs of $56,081. Schafroth called Nanlawala at approximately 9:20 a.m. and informed him of these events.

### B. The Sears Account

Nanlawala opened another account with Jack Carl through Neal Sears in September, 1985 (the "Sears Account"). The Sears Account started as a discount account but later was converted into a full service account. Nanlawala gave Sears full authority when the account became a full service account in January, 1986. Plaintiffs allege that during the period from February, 1986, to May, 1986, Sears traded the Sears Account for the purpose of generating commissions and not in the best interests of plaintiffs. Plaintiffs also allege that when Sears solicited Nanlawala to open the Sears account he made two statements which were false: (1) that he (Sears) had special expertise as a commodity trader and (2) that he would watch the markets closely and would pick good trades for Nanlawala.[3]

### DISCUSSION

#### Count I

In Count I, plaintiffs allege that Jack Carl (1) "deceived and attempted to deceive Mr. Nanlawala regarding the status of the Discount Account" in violation of section 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b [4] and (2) violated 17 C.F.R. § 166.2 by entering liquidating orders for the Discount Account without the express approval of Nanlawala. Defendants move to dismiss Count I on the ground that it fails to state a claim for fraud.

7 U.S.C. § 6b prohibits fraud on the part of future commission merchants. The elements of a fraud action under 7 U.S.C. § 6b are derived from the common-law action for fraud. *Horn v. Ray E. Friedman & Co.*, 776 F.2d 777 (8th Cir.1985). Fraud must be plead with specificity under Federal Rule of Civil Procedure 9(b). Plaintiffs have pointed to no specific misrepresentations by defendants in connection with the liquidation of the Discount Account. To the contrary, plaintiffs allege that defendants called Nanlawala on the morning of March 19, 1986, and told him that if he did not meet a margin call of $20,000 by the time the markets opened, they would place stop orders on his contracts. They subsequently did just that. These actions may

2. Plaintiffs have submitted transcripts of the tape recordings made of these telephone conversations by Jack Carl. Defendants contend that the transcripts are not entirely accurate but do not identify specific inaccuracies. It is not necessary to resolve or even to address this alleged conflict since the affidavits of the participants independently establish the material facts dealing with those communications for purposes of these motions.

3. Aside from the last two sentences, which are identified as plaintiffs' allegations, this recitation of the facts represents undisputed facts.

4. Plaintiffs also invoke Sections 4c(c) and 22 of the CEA. Section 22 provides for private rights of action for violations of the CEA. It is unclear why plaintiffs invoke Section 4c(c), which deals with commodity options.

or may not have been a breach of the Customer Agreement (see discussion with regard to Count VI, *infra* at 10–14), but they are not fraud.

As to plaintiffs' allegation that Jack Carl violated 17 C.F.R. § 166.2, defendants make no argument that it should be dismissed. Therefore defendants' motion to dismiss must be granted as to plaintiffs' claim for a violation of 7 U.S.C. § 6b but denied as to the claim of a violation of 17 C.F.R. 166.2.

■ Plaintiffs move for summary judgment as to all counts. 17 C.F.R. 166.2 provides:

No futures commission merchant, introducing broker or any of their associated persons may directly or indirectly effect a transaction in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account:

(a) Specifically authorized the futures commission merchant, introducing broker or any of their associated persons to effect the transaction (a transaction is "specifically authorized" if the customer or person designated by the customer to control the account specifies (1) the precise commodity interest to be purchased or sold and (2) the exact amount of the commodity interest to be purchased or sold); or

(b) Authorized in writing the futures commission merchant, introducing broker or any of their associated persons to effect transactions in commodity interests for the account without the customer's specific authorization.

It is clear that Nanlawala did not "specifically authorize" the liquidation of his account on March 19, 1986. However, § 166.-2(b) provides for an alternative authorization, in writing, to act without specific authorization. Nanlawala signed the Customer Agreement with Jack Carl. Paragraph 10 of that agreement provides authorization for Jack Carl to liquidate a customer's contracts under certain conditions. (See pp. 11–12, *infra*.) Paragraph 2 incorporates exchange rules which establish a rea-

sonableness standard for responding to margin calls. Whether Jack Carl violated § 166.2 depends on whether it breached the customer agreement as to margin calls and liquidation. As discussed below, that depends on whether it gave Nanlawala a "reasonable" time to comply with the margin call under the circumstances, a question as to which a genuine issue of fact exists. Therefore plaintiffs' motion for summary judgment must be denied as to their claim under § 166.2.

## Count II

■ Plaintiffs make two claims in Count II. First, they allege that Jack Carl and Sears violated 7 U.S.C. § 6b in that they "deceived and attempted to deceive plaintiffs regarding the status of the Sears Account." (Complaint, par. 42.) Plaintiffs specify only two allegedly false statements in regard to the Sears Account, which presumably provide the basis for this claim: (1) that Sears had "expertise" and (2) that he would "pick good trades" for Nanlawala. The first statement, if made, is merely "puffing" and is not actionable. The second statement is not actionable because it is merely a prediction of future investment success and not a representation of a preexisting material fact. *Barrington Press, Inc. v. Morey*, 752 F.2d 307, 310 n. 1 (7th Cir.1985); *North American Financial Group, Ltd. v. S.M.R. Enterprises, Inc.*, 583 F.Supp. 691, 698 (N.D.Ill.1984). Therefore this claim must be dismissed.

■ Second, plaintiffs claim that Sears and Jack Carl "churned" the Sears Account in violation of 7 U.S.C. § 6b and 17 C.F.R. §§ 166.2 and 166.3. Defendants move to dismiss this claim on the grounds that plaintiffs have failed to allege that the broker exercised control over the account, that the trading was excessive, and specifically which trades were involved. But plaintiffs do allege that Sears placed orders without prior approval by plaintiffs (Complaint, par. 30) and that the trading was done "for the purpose of generating commissions and not in the best interests of the Nanlawalas" (Complaint, par. 31). Plaintiffs also identify the time period of Febru-

ary, 1986, through May, 1986, as the time when Sears was engaged in trading for his own benefit (in commissions). These allegations satisfy the pleading requirements for churning. Plaintiffs do not need to allege their investment goals, as defendants also contend; that is a matter for proof and not pleading, and goes to the issue of whether trading was excessive. Defendants' motion to dismiss must be denied as to the claim for churning.

■ Plaintiffs move for summary judgment as to the claim for churning, and submit the affidavit of Linda C. Frazier, who has worked in the commodities trading industry and who has testified as an expert witness in other cases. She states that she analyzed the Sears Account and that the "commission-to-average-equity ratios" for the account during the period from February 1, 1986, through May 12, 1986, were "far above the criteria which has been established for churning." (Frazier affidavit, par. 4.)[5] Frazier does not, however, state an opinion that Sears was churning the account.

Neal Sears submits an affidavit in response in which he states that Nanlawala instructed him to trade the Sears Account "actively," to day trade in the Sears Account, not to hold positions for a long time, and that he did not want to carry large positions in the Sears Account. Sears states that he traded according to those instructions. (Sears affidavit, par. 7, 8.)

■ Based on these affidavits, an issue of fact exists as to whether Sears did in fact "churn" the account. In *Costello v. Oppenheimer & Co.*, 711 F.2d 1361, 1367–68 (7th Cir.1983), the Seventh Circuit explained:

> The term "churning," in the context of securities regulation, denotes a course of excessive trading through which a broker advances his own interests (e.g., commissions based on volume) over those of his customer.... There is no single test

or formula for proving that churning has occurred, but it is generally said that a plaintiff must show (1) that the broker exercised control over the transactions in the account and (2) that the amount of trading was excessive....

\* \* \* \* \* \*

> The second question—whether [defendant] abused its control by engaging in excessive trading—requires ... detailed consideration. The essential issue of fact is whether the volume of transactions, considered in light of the nature and objectives of the account, was so excessive as to indicate a purpose on the part of the broker to derive a profit for himself at the expense of his customer.... The starting point for such an inquiry is, of course, delineation of the customer's investment goals, for those objectives significantly illuminate the context in which the trading took place and, indeed, from standards against which the allegations of excessiveness may be measured.

Contrary to the suggestion by plaintiffs that a particular value for the "commission-to-average-equity-ratio" for an account can be sufficient, considered in a vacuum, to establish that trading was "excessive" and therefore that the broker engaged in "churning," *Costello* demonstrates that the rate of trading must be evaluated in the context of the customer's investment goals. Sears' affidavit suggests that Nanlawala's investment goals and instructions to Sears may justify the high level of trading. Therefore summary judgment must be denied as to the claim for churning in Count II.

### Count V

Plaintiffs allege common-law fraud in Count V. For the reasons stated above in the discussions of the fraud claims in Counts I and II, defendants' motion to dismiss Count V must be granted.

---

**5.** Frazier also indicates that another "indicia of churning" is "holding positions open for a short period of time before liquidating them." (Frazier affidavit, par. 5.) She then gives some statistics as to the number of contracts that were held in the Sears Account for short periods of time, but does not express an opinion as to whether or not these statistics create an inference of churning.

## Count VI

In Count VI, plaintiffs seek damages for breach of contract, contending that Jack Carl's refusal to allow Nanlawala more time to cover the margin call was a breach of the contract. Both sides move for summary judgment. Jack Carl contends that it is entitled under the terms of the contract between Nanlawala and Jack Carl to liquidate an account "when that account is in danger of going into a deficit position or when margins are inadequate." (Amended Memorandum in Support of Defendants' Motion for Summary Judgment at 16.) Defendants apparently take the position that under these circumstances they are not required to allow an account holder any minimum time period in which to cover the margin call, or that the time allowed Nanlawala (which was arguably only 30 minutes) was sufficient. Plaintiffs contend, on the other hand, that giving Nanlawala so little time under the circumstances to meet the margin call was unreasonable as a matter of law, and therefore violated exchange rules dealing with margin calls of the Chicago Mercantile Exchange ("CME") and the Chicago Board of Trade ("CBOT"), which are incorporated into the contract.[6]

The Customer Agreement between Nanlawala and Jack Carl contains the following provisions:

9. Margin Requirements.

Customer will at all times maintain such margins or collateral for Customer's acounts as requested from time to time by Jack Carl (which requests may be greater than exchange and clearing house requirements). Customer shall make deposits of margin or collateral as Jack Carl requests within a reasonable time after such request. In the absence of unusual circumstances, one (1) hour shall be deemed to be a reasonable time however Jack Carl reserves the right to request deposits on shorter notice at its sole discretion. Margin deposits shall be made by wire transfer with immediately available funds and shall be deemed made when received by Jack Carl....

10. Liquidation and/or Cancellation.

Jack Carl is authorized, without notice to Customer, to sell any or all Commodity Contracts or other property in Customer's accounts or otherwise in its possession, or to buy in any or all Commodity Contracts or other property which Customer's accounts may be short, or to cancel any or all unexecuted orders Jack Carl is holding for Customer's accounts when (a) margin deposits are exhausted or inadequate in Jack Carl's judgment, (b) margin deposits are below the level requested by Jack Carl or established by any applicable rule or regulation of an exchange or clearing house, (c) Customer's accounts shall incur a deficit balance, (d) Customer is indebted to Jack Carl, or (e) Jack Carl otherwise deems itself to be insecure or in need of protection.

These provisions of the Customer Agreement purport to give Jack Carl practically complete discretion to liquidate customer accounts. Although paragraph 9 seems to incorporate a reasonableness standard for responding to margin calls, it also gives Jack Carl "sole discretion" to shorten the response period. Paragraph 10 identifies certain grounds for liquidation but then finishes by according Jack Carl authority to liquidate whenever it "deems itself to be insecure or in need of protection."

Plaintiffs rightly point out, however, that paragraph 2 of the Customer Agreement incorporates the rules of the exchange where transactions are executed. Paragraph 2 provides:

2. Applicable Rules and Regulations.

exchanges.

---

**6.** Although it is not entirely clear, the contracts at issue were presumably traded at these two

All orders entered for the purchase or sale of a Commodity Contract and all transactions in Commodity Contracts executed for Customer's Accounts shall be subject to the constitution, by-laws, rules, regulations, customs and usages (collectively "rules") of the exchange or market, and its clearing house, if any, where such orders are directed or such transactions are executed....

Chicago Board of Trade Rule 430.00 provides:

Deposits by customers—A member acting as commission merchant for a customer (member or nonmember) may require from such customer a deposit, as indemnity against liability, and subsequent deposits to the extent of any adverse fluctuations in the market price. Such deposits must be made with the commission merchant within a reasonable time after demand, and in the absence of unusual circumstances, one hour shall be deemed a reasonable time. The failure of the customer to make such deposit within such time, shall entitle, but shall not obligate, the commission merchant to close out the trades of the defaulting customer....

Chicago Mercantile Exchange Rule 827(D) provides:

The clearing member may call for additional margins at his discretion, but whenever a customer's margins are depleted below the minimum amount required, the clearing member must call for such additional margins as will bring the account up to initial margin requirements, and if within a reasonable time the customer fails to comply with such demand (the clearing member may deem one hour to be a reasonable time), the clearing member may close out the customer's trades or sufficient contracts

thereof to restore the customer's account to required margin status.

Because these exchange rules establish a reasonableness standard for the time accorded a customer to comply with a margin call, and because the Customer Agreement is "subject to" these rules pursuant to paragraph 2 of that agreement, defendants' liability for the liquidation of Nanlawala's account will depend on whether Jack Carl accorded Nanlawala a "reasonable time" to comply with its margin call before liquidating his account. *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 992 (S.D.N.Y.1984).

■ Defendants contend that Jack Carl had several good reasons for liquidating the account when they did and not waiting any later, including the volatility of those particular markets, the relatively small net worth of Nanlawala, the possibility of his account going into a deficit position, and a previous delay in meeting a margin call. Plaintiffs point to certain facts that they argue made it reasonable for Jack Carl to give Nanlawala more time, including his record of always having met margin calls in the past, his verbal assurances that morning that he would personally bring cash to Jack Carl's offices, and his alleged financial ability to do so. Summary judgment is improper as to Count VI for either side. Whether Jack Carl acted reasonably under the circumstances is a question of fact for the jury. *Id.*[7]

### Count VII

■ In Count VII, plaintiffs allege that the liquidation constituted a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Consumer Fraud Act"), Ill.Rev.Stat. ch. 121½, §§ 261, *et seq.* (1985). Although the Consumer Fraud Act is broader than common-law fraud, a violation requires some element of fraud or deception. *Kellerman v. Mar-*

---

**7.** Defendants also argue that they did not liquidate Nanlawala's account *because* of his failure to meet the margin call. But this argument appears groundless in light of the undisputed facts that Jack Carl made the margin call, Nanlawala did not meet it by the time the markets opened at 9:00 a.m. and Jack Carl therefore liquidated his account pursuant to stop orders. It appears that if Nanlawala had gotten the funds to Jack Carl before 9:00 a.m. they would not have liquidated the account. Therefore they liquidated the account because he failed to meet the margin call in the time provided.

*Rue Realty & Builders, Inc.,* 132 Ill. App.3d 300, 87 Ill.Dec. 267, 271, 476 N.E.2d 1259, 1263 (1st Dist.1985). As discussed above, there are no proper allegations of fraud in connection with the liquidation of the Discount Account. Plaintiffs merely allege that Nanlawala was not in fact given a "reasonable" time to comply with the margin call, in violation of the contract. Therefore Count VII must be dismissed as to the liquidation of the Discount Account.

■ Plaintiffs also allege that defendants' conduct in connection with the Sears Account violates the Consumer Fraud Act. Plaintiffs' claim as to the Sears Account is for churning. Certainly there is the requisite element of fraud or deception in the practice of churning. However, under the Consumer Fraud Act, an effect on consumers generally is required. *UNR Industries, Inc. v. Continental Insurance Co.,* 623 F.Supp. 1319, 1331 (N.D.Ill.1985); *Newman-Green, Inc. v. Alfanzo-Laurain,* 590 F.Supp. 1083, 1087 (N.D.Ill.1984); *Frahm v. Urkovich,* 113 Ill.App.3d 580, 585–86, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist.1983); *Exchange Nat. Bank v. Farm Bureau Life Ins. Co.,* 108 Ill.App.3d 212, 216, 63 Ill.Dec. 884, 887, 438 N.E.2d 1247, 1250 (3d Dist.1982). None is alleged by plaintiffs with regard to the churning. Therefore Count VII must also be dismissed as to the Sears Account.

## Count VIII

■ In Count VIII plaintiffs allege that Jack Carl and Sears owed plaintiffs a fiduciary duty which arose "by reason of [Nanlawala] giving [defendants] de facto or actual control of the Sears and Atkins Accounts" (Complaint, par. 61), and that they breached that duty. Since plaintiffs have agreed to a dismissal of claims as to the Atkins Account, the only claim for breach of fiduciary duty that remains is as to the claim for churning the Sears Account. Defendants move to dismiss on the ground that they did not have a fiduciary relationship with Nanlawala. However, plaintiffs have adequately alleged a fiduciary relationship. They allege that the Sears account was opened with Jack Carl through

Sears, and that beginning in January, 1986, Nanlawala relied upon the advice of Sears in placing orders for the account and that on several occasions Sears placed orders without prior approval from plaintiffs. (Complaint, par 30.) Although the degree of discretion Sears had over the trading and the concomitant degree of trust reposed in Sears by Nanlawala are issues of fact that may influence the scope of the duty, if any, owed by defendants, that is a matter for trial. *See Hill v. Bache Halsey Stuart Shields Inc.,* 790 F.2d 817, 824 (10 Cir.1986); *Fey v. Walston & Co.,* 493 F.2d 1036, 1049 (7th Cir.1974). Therefore defendants' motion to dismiss Count VIII is denied.

Since an issue of fact exists as to whether Sears and Jack Carl churned the Sears Account, an issue also necessarily exists as to whether defendants breached any fiduciary duty. Therefore plaintiffs' motion for summary judgment must be denied as to Count VIII.

In summary, plaintiffs' remaining claims are directed to two factual matters: (1) the liquidation of the Discount Account and (2) the alleged churning of the Sears Account. The remaining claims consist of the following:

Count I—allegation that the liquidation violated 17 C.F.R. § 166.2, which necessarily depends on whether defendants breached the Customer Agreement;

Count II—allegation that defendants violated the CEA by churning the Sears Account;

Count VI—allegation that defendants breached the Customer Agreement when they liquidated the Discount Account;

Count VIII—allegation that defendants breached their fiduciary duty to plaintiffs by churning the Sears Account.

IT IS THEREFORE ORDERED that:

(1) Counts III and IV and all other claims directed to the Atkins Account are dismissed with prejudice by agreement of the parties;

(2) Plaintiffs' motion for summary judgment is denied;

(3) Defendants' motion to dismiss is granted in part and denied in part;

(4) Defendants' motion for summary judgment is denied.