Frances McBLAINE, Plaintiff,

v.

JACK CARL ASSOCIATES, INC., et al., Defendants.

No. 88 C 7460.

United States District Court,
N.D. Illinois, E.D.

Feb. 3, 1989.

Stuart H. Verson, Chicago, Ill., for plaintiff.

Lee Ann Russo, Steven J. Roeder, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Frances McBlaine ("McBlaine") commenced this action against defendants Jack Carl Associates, Inc. ("Jack Carl"), Chicago Commodity Corp. ("Chicago Commodity") and Chicago Commodity executives W.R. Diamond II ("Diamond") and Marty Sachs ("Sachs") (collectively, "defendants"), alleging fraud in violation of the Commodity Exchange Act ("the Act"). 7 U.S.C. § 6c(b). Jurisdiction is based on 28 U.S.C. § 1332. The defendants move to dismiss the complaint under Fed.R.Civ.P. 9(b) and 12(b)(6).

## FACTS

McBlaine is a resident of Decatur, Indiana. Jack Carl is an Illinois corporation with its principal place of business in Chicago. Chicago Commodity is a Florida corporation with its principal place of business in Miami, Florida. Both Jack Carl and Chicago Commodity are engaged in the business of buying and selling commodity futures contracts and options for their own accounts and for the accounts of customers. Complaint ¶¶ 5, 6. Both companies also provide advice to customers on commodities, commodity futures contracts and options on commodity futures contracts. *Id.*

The complaint alleges that Jack Carl agreed to compensate Chicago Commodity executives for business referrals. *Id.* at ¶¶ 10, 11. Pursuant to this agreement, Sachs contacted McBlaine on October 19, 1984, and urged her to open a commodity options account with Jack Carl. *Id.* at ¶ 12. Sachs repeatedly emphasized the potential for large profits; however, he did not warn McBlaine of the risks associated with these investments. *Id.* Sachs also assured McBlaine of his own expertise in commodities investments. *Id.* McBlaine informed Sachs that she was only interested in conservative investments designed to achieve long-term capital appreciation. *Id.* at ¶ 13. Sachs assured McBlaine that Jack Carl would meet her investment goals. *Id.* Relying on these assurances, McBlaine opened an account with Jack Carl with an opening balance of $28,977. *Id.* at ¶ 15.

The trading in McBlaine's account commenced on October 19, 1984, and continued until September 24, 1986. Throughout this period, McBlaine's account was controlled exclusively by Sachs and Diamond. *Id.* at ¶ 14. Sachs and Diamond solicited and recommended all authorized trades. *Id.* Without exception, McBlaine followed each recommendation. *Id.*

On January 30, 1985, McBlaine received an unsolicited telephone call from Diamond urging her to continue trading commodity options with Jack Carl. *Id.* at ¶ 16. During this conversation, Diamond repeatedly emphasized the large profit potential associated with commodity options trading. *Id.* However, he did not discuss the risks associated with these investments. *Id.* McBlaine informed Diamond that she was only interested in conservative investments and long-term capital appreciation. *Id.* at ¶ 17. She expressly asked Diamond to avoid high risk investments. *Id.* Diamond agreed to follow McBlaine's instructions, and reassured her that he would personally monitor the trading in her account. *Id.*

Despite Diamond's assurances, all did not go as McBlaine might have hoped. On May 9, 1986, McBlaine instructed Diamond to liquidate a trading position worth $17,561. *Id.* at ¶ 22. However, Diamond failed to execute the order, causing a loss of $17,561. *Id.* On August 15, 1986, she instructed Diamond to liquidate a trading position worth $21,900. *Id.* Again, Diamond failed to execute the order, and the option expired worthless, for a loss of $21,900. *Id.* On August 20, 1986, McBlaine ordered Diamond to liquidate a position worth $8,000. *Id.* Once more, Diamond failed to liquidate the position causing the option to expire worthless, for a loss of $8,000. *Id.* Finally, on September 10, 1986, McBlaine instructed Diamond to close her account with Jack Carl. *Id.* When Diamond received this instruction, McBlaine's account contained two trading positions worth $40,000. *Id.* Diamond did not close these positions until September 24, 1986, when they were worth only $19,415. *Id.* This meant that McBlaine lost $20,585 in potential profits.

McBlaine alleges fraud in violation of Sections 32.9 and 33.10 of the regulations of the Commodity Exchange Act. 17 C.F.R. §§ 32.9, 33.10 (1988).[1] She claims that the defendants conspired to defraud her by churning her account for the purpose of generating commission income.[2] McBlaine claims that from October 19, 1984 through September 24, 1986, Jack Carl made 31 trades totalling $248,924, including $69,023 in commissions. Complaint at ¶ 24. Based on this data, McBlaine alleges that Jack

Carl turned over her initial investment of $28,977, 8.5 times.[3] *Id.* at ¶ 26.

McBlaine also claims that Sachs and Diamond, acting in concert with Jack Carl and Chicago Commodity, made intentional misrepresentations by falsely reassuring her that (1) they could and would recommend conservative investments; (2) commodity options contracts were not high risk investments; (3) commodity options trading was consistent with her stated investment objectives; and (4) that a 40 percent commission rate was usual in the industry. *Id.* at ¶ 27.

Finally, McBlaine claims that the defendants engaged in reckless and fraudulent acts by failing to timely execute her sell orders. *Id.* at ¶ 26. She seeks damages of $187,530.67. *Id.* at ¶ 32.

## DISCUSSION

When considering a motion to dismiss, the court must view the allegations of the complaint in the light most favorable to the plaintiff, and accept as true, all well pleaded material facts. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976); *Bruss Co. v. Allnet Communications Services, Inc.,* 606 F.Supp. 401, 404 (N.D.Ill. 1985). The complaint will not be dismissed unless it appears beyond doubt that no facts are alleged to support the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Because McBlaine commenced an action under a federal statute designed to prevent fraud, the allegations in her complaint will be construed flexibly to effectuate the statute's remedial purposes. *Hirk v. Agri–Re-*

---

1. Sections 32.9 and 33.10 prohibit fraud in commodity options transactions in identical language:

    It shall be unlawful for any person directly or indirectly:

      (a) To cheat or defraud or attempt to cheat or defraud any other person;

      (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;

      (c) To deceive or attempt to deceive any other person by any means whatsoever; in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction.

2. The term "churning" describes a situation in which a broker advances his own financial interests over those of his client by excessively trading the client's account for the purpose of generating commission income. *Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1367–68 (7th Cir.1983); *Hagstrom v. Breutman,* 572 F.Supp. 692, 698 n. 7 (N.D.Ill.1983).

3. The "turnover rate" of an account is the ratio of the total cost of the purchases made for the account within a given period, to the amount invested. *Costello,* 711 F.2d at 1369.

search Council, Inc., 561 F.2d 96, 103 (7th Cir.1977); Hagstrom, 572 F.Supp. at 696.

■ Defendants claim that the allegations in the complaint do not comply with Fed.R.Civ.P. 9(b) and thus fail to state a claim under Rule 12(b)(6). Rule 9(b) requires allegations of fraud to be pleaded with particularity. Apperson v. Ampad Corp., 641 F.Supp. 747, 751 (N.D.Ill.1986). This requirement must be read in conjunction with Fed.R.Civ.P. 8(a), which requires a short and plain statement of the claim. Tomera v. Galt, 511 F.2d 504, 508 (7th Cir.1975). Generally, a complaint alleging fraud is pleaded with sufficient particularity if it sets forth the time, place and substance of the allegedly false representations, as well as the identity of the parties involved in the fraud. Bruss Co. v. Allnet Communications Services, Inc., 606 F.Supp. 401, 404 (N.D.Ill.1985).

■ McBlaine claims that Diamond and Jack Carl ignored her trading instructions on four separate occasions. Complaint ¶ 22. Ignoring a client's trading instructions is a breach of fiduciary duty. Evanston Bank v. Conticommodity Services, Inc., 623 F.Supp. 1014, 1023 (N.D.Ill. 1985). A breach of fiduciary duty becomes actionable under the Commodity Exchange Act when the defendant's conduct is reckless or intentional. Id., McCarthy v. PaineWebber, Inc., 618 F.Supp. 933, 940 (N.D. Ill.1985). Under the standards governing commodities trading practices, failure to comply with a client's trading instructions is reckless conduct. Id. Because this complaint sets forth the date of each instruction, the precise security involved and the amount of each loss, it states a claim under the Act. Id.

■ McBlaine also alleges sufficient facts to assert a claim of misrepresentation. The complaint states that McBlaine received unsolicited telephone calls from Sachs on October 19, 1984, and from Diamond on January 30, 1985. Complaint ¶¶ 13, 17. In each conversation, McBlaine stated that she would only consider conservative investments designed to achieve long-term capital appreciation. Id. Sachs and Diamond each assured McBlaine that commodity option trading was an excellent means to achieve her investment objectives. Id. However, they did not inform McBlaine of the risks associated with these investments. Id. As fiduciaries, Sachs and Diamond had a duty to disclose the risks associated with investments they recommended to their clients. Evanston Bank, 623 F.Supp. at 1024. Because McBlaine specifically informed Sachs and Diamond that she was risk-averse, it is reasonable to infer that Sachs and Diamond made a conscious decision not to disclose the risks associated with options trading. Id. At a minimum, their conduct constitutes recklessness and is actionable under the Act.

■ Defendants do not challenge the complaint's allegations of recklessness. Instead, they argue that the complaint should be dismissed for failure to allege facts sufficient to state a claim of churning. Churning occurs when a broker advances his own financial interests by engaging in excessive trading of a client's account, thereby reaping the benefits of additional commissions. Costello, 711 F.2d at 1367; Nanlawala v. Jack Carl Associates, 669 F.Supp. 204, 207–08 (N.D.Ill.1987); Bieganek v. Wilson, 642 F.Supp. 768, 771 (N.D.Ill.1986). The elements of churning are (1) control over the account by the broker, and (2) excessive trading. Id.

The complaint meets the requirements of the first element. McBlaine's willingness to trust Sachs' and Diamond's judgment and alleged expertise, and her unquestioning acceptance of their recommendations, establishes that the defendants had constructive if not actual control over her account. Costello, 711 F.2d at 1368.

■ Less certain is whether the defendants abused their control by engaging in excessive trading. Liability for excessive trading turns on whether the volume of transactions in the account is inconsistent with the client's investment objectives. Id.; Evanston Bank, 623 F.Supp. at 1024; Roche v. E.F. Hutton & Company, 603 F.Supp. 1411 at 1416 (M.D.Pa.1984). The appearance of inconsistency, however, is

often subjective. Therefore, allegations of excessive trading must be substantiated by objective criteria such as the ratio of the broker's commissions to the amount of the account, and the turnover rate, or ratio of total purchases to the amount invested. *Costello*, 711 F.2d at 1369. The complaint meets this test. McBlaine stated on two occasions that her principal investment goal was preservation of capital and long-term appreciation. Complaint ¶¶ 13, 17. This suggests that McBlaine wanted to remain in secure investments for a substantial period of time. The complaint, however, states that between October 19, 1984 and September 24, 1986, Sachs and Diamond executed 31 trades, with a total purchase price of $248,924, or a turnover rate of 8.5 times McBlaine's initial investment of $28,977. *Id.* at ¶ 26. The volume of short-term trading in McBlaine's account was inconsistent with her objective of long-term capital preservation. Moreover, the $69,023 in commissions generated from these trades was more than twice the value of McBlaine's account. Under these circumstances, the complaint states enough facts to allege excessive trading. *Costello*, 711 F.2d at 1368–69; *Nanlawala*, 669 F.Supp. at 207–08; *Bieganek*, 642 F.Supp. at 771–72.

Defendants argue that statistical ratios in this case are irrelevant because the complaint fails to identify the securities involved and the nature, amount and dates of the transactions. Defendants cite to cases decided by this court before *Costello*. They ignore the fact that *Costello* and its progeny significantly relaxed the pleading requirements for a churning claim. *Id.* McBlaine identifies the time period when defendants allegedly churned her account, as well as the precise number of trades executed by Sachs and Diamond. Therefore, she alleges sufficient facts under Rule 9(b) to support a claim of churning. *Id.*

■ The final issue raised by defendants is McBlaine's claim of damages. Defendants argue that the complaint fails to plead actual damages because the alleged churning produced a profit of $61,394.18.

This argument is without merit. The proper measure of damages in a claim for churning is not the change in the market value of the portfolio, but the amount of commissions, fees, interest and taxes paid to defendants as a result of their excessive trading. *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 326 (5th Cir.1981); *Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 73 (S.D.N.Y.1981).

In this case, defendants' alleged churning produced $69,023.72 in commissions. Complaint ¶ 26. This is the starting point for McBlaine's damages. McBlaine arguably is also entitled to damages for Diamond's failure to properly liquidate her trading positions. *Id.* at ¶ 22. This amounts to an additional $76,046 in damages, or $145,070 in the aggregate. However, the complaint seeks recovery of $187,-530.62. *Id.* at ¶ 24. The complaint does not state the basis for this amount. Therefore, the defendants may be entitled to a more definite statement of McBlaine's alleged damages. *American Nurses Ass'n v. State of Illinois*, 783 F.2d 716, 725 (7th Cir.1986). However, because the complaint adequately states the nature of the damage claim, the issue of damages may be developed by pretrial discovery and not by requiring McBlaine to amend her complaint. *Everco Indus. Inc. v. O.E.M. Products Co.*, 63 F.R.D. 662, 666 (N.D.Ill.1974).

## CONCLUSION

The defendants' motion to dismiss is denied. Defendants are directed to answer the complaint by February 17, 1989.