EXCHANGE NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* FARM BUREAU LIFE INSURANCE COMPANY OF MICHIGAN *et al.*, Defendants-Appellees.

Third District  No. 81—697

Opinion filed July 20, 1982.—Rehearing denied September 3, 1982.

Richard G. Siegel, of Chicago, for appellants.

Sheldon Davidson and Marilee Roberg, both of Pedersen & Houpt, and David P. Schippers, of Schippers & Mackay, both of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiffs, Barry Moss and Steven Bloomberg, are beneficiaries of a land trust with the nominal plaintiff, Exchange National Bank, the trustee. The land trust held title to certain real property. Plaintiffs wanted to erect a commercial building on that land, which was located in Bolingbrook. They contracted with Farm Bureau Life Insurance Company of Michigan (Farm Bureau) for a permanent loan commitment. Such loan was to be secured by a mortgage on the property and building. The loan contract consists of an offer, and three later amendments, the last dated April 15, 1977. The loan was for $393,750 to be paid back in full in 15 years. The terms of repayment were based on a 25-year amortization schedule at a 9.25% annual interest rate. The commitment could be extended for no longer than 180 days without Farm Bureau imposing a fee. For any further extension the lender could charge no more than ½ of 1% of the committed funds as a penalty. If the loan was not completed by April 1978, it expired. Closing of the final mortgage could not occur until the completed building was inspected and accepted by the lender.

In June 1977, plaintiffs received a temporary construction loan from Great Lakes Mortgage Company (Great Lakes). This loan was to provide funds to build the commercial structure. It was to be repaid from the proceeds of the permanent mortgage. The permanent financing contract was extended beyond 180 days. Prior to its expiry, in September 1978, Great Lakes requested Farm Bureau to inspect the building in order to finalize the mortgage. Farm Bureau did not complete that inspection but waited until April 17, 1979, to do so. Then, it accepted the building. Thereupon, Farm Bureau wanted to close the mortgage but invoked the penalty clause because of the additional time which had been granted past the agreed upon extension period.

On March 4, 1980, the plaintiffs sued Farm Bureau and its corporate executives (individually and in their official capacities) in Will County Circuit Court. The complaint contained five counts. Counts I and II directed only against the corporate defendant, Farm Bureau, and were breach of contract actions maintaining Farm Bureau unreasonably withheld the inspection of the building. Specific performance or damages based on the difference it cost plaintiffs to secure another long-term mortgage loan (i.e., $637,610) were requested. Count III, which was only directed against the individual defendants, alleged a conspiracy by such individual defendants to withhold inspection in order to escalate the interest on the permanent mortgage. Punitive damages of $2 million were requested. Count IV, which was also directed only against the individual defendants, sought recovery on a theory of fraud. Count V named all defendants and alleged a violation

of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261), and requested $50,000 in damages, attorney's fees, and costs.

After unsuccessfully attempting to remove the entire action to Federal district court, plaintiffs obtained a default judgment against the corporate defendants, Farm Bureau, on counts I and II. That judgment remains the focus of Farm Bureau's pending section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72), filed October 21, 1980. On the latter date, all defendants also filed a motion to dismiss counts III, IV, and V. The motion was granted. Plaintiffs filed an amended complaint. It is 54 pages long and names all defendants. Count III alleges that the defendants interfered with plaintiffs' contract and business relationships with Great Lakes and other unspecified lenders. Count IV realleges fraud. Again, count V seeks to recover under the Consumer Fraud Act. Eventually, the trial judge dismissed these three counts with prejudice for failure to state a cause of action. On October 30, 1981, he certified that order indicating no just reason existed for delaying enforcement of an appeal. (73 Ill. 2d R. 304(a).) Plaintiffs appealed. Defendants cross-appealed and moved to dismiss the appeal arguing the matter should not go forward since counts I and II are still pending a decision, and our present review would result in piecemeal appeals. The motion to dismiss the appeal was denied by this court on February 11, 1982.

Interference with a person's contractual relationships has a long and well-developed history in Illinois. (*Doremus v. Hennessey* (1898), 176 Ill. 608; *Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400.) Plaintiffs, however, have not stated a cause of action under such tort theory.

■ As to count III, to properly plead a tortious interference with a contract, a complaint must state, *based on facts*, that: (1) a current contract was in force and effect between the plaintiff and another party; (2) the defendant induced the breach of such contract, or caused a third party not to perform a contract, or enter into or continue business relationships with the plaintiff; and, (3) the interference must be intentional, causing a contract breach of termination. *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill.2d 468, 473-74.

Plaintiffs' complaint contains no allegation of a contract breached with a third party because of the wilful action or omissions of the defendants. The contract with Great Lakes is still in effect. Defendants have not induced a breach of that contract or purposely caused Great Lakes to not perform its contract with plaintiffs. (*Cf. Swager v. Couri* (1979), 77 Ill. 2d 173, 187.) Plaintiffs' amended complaint does

not relate any facts which indicate that defendants' conduct was to intentionally induce a breach of contract or to terminate any agreement. Nor can such facts be inferred from the complaint. A mere recital that defendants interfered with plaintiffs' business affairs is insufficient. Without a factual basis indicating how defendants' conduct was intentional, Farm Bureau or any other defendant could not be the legal cause of any contractual interference which is cognizable in tort. As to those prospective lenders allegedly induced by defendants to not deal with plaintiff, such firms or persons are unidentified. Who are they? What are their relationships to the plaintiffs? The complaint does not say. Nor are facts alleged indicating how any of the defendants exerted influence on such lenders to deny or avoid contracts concerning permanent or other financing arrangements with respect to plaintiffs' building project. Because plaintiffs failed to delineate the essential elements of a cause of action for interference with a contract or business relationship, count III was properly dismissed.

██ ■ Count IV is fatally deficient. It is settled law that any recovery based on theories of fraudulent misrepresentation or deceit must be pleaded with certainty and specificity. This does not mean cluttering up the pleadings with adjectival phrases, gerunds, or other modifiers. All conduct which forms the purported basis for any fraudulent concealment or misrepresentation are identified only to Farm Bureau's officers as a group, not as to individual agents or officials. Although eight officers are named as defendants, the complaint does not delineate which person is responsible for what conduct. Furthermore, what are those misrepresentations? How were they conveyed? The complaint does not set out these essential details. The allegations of count IV are conclusory statements, which are insufficient in law to state a cause of action based on fraud. (*Horan v. Blowitz* (1958), 13 Ill.2d 126, 133.) Dismissing this count was proper.

As to count V, we acknowledge the Consumer Fraud and Deceptive Business Practices Act (the Act) must be liberally construed. (Ill. Rev. Stat. 1979, ch. 121½, par. 271(a).) Although we believe the Act applies to mortgage lenders, we do not believe it is completely openended. (See *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 285.) It does not apply to every situation where, as in the cause at bar, the only actual controversy is whether an isolated breach of contract occurred. Plaintiffs' theory of defendants' deviant business behavior is farfetched. They maintain that defendants, who are in the business of lending mortgage funds, loaned them money only after agreeing among themselves to breach such loan agreement in order to extort more money out of plaintiffs

at a later time. In other words, defendants entered into the loan commitment with the malicious intent to repudiate it. As part of such plot, defendants concealed such intention wilfully throughout their dealings with plaintiffs, including granting them extensions under the commitment agreement.

We believe the scenario plaintiffs have painted is contrived. Commercially, it is ridiculous. In the absence of an allegation indicating such practices to be part of a pattern of defendants' lending activities, we believe count V fails to state a cause of action. Every individual breach of contract between two parties does not amount to a cause of action cognizable under the Act. If it did, common law breach of contract actions would be supplemented in every case with an additional and redundant remedy. Such is not the intention of the Consumer Fraud Act. Therefore, count V was correctly dismissed.

For the reasons stated, we affirm the order and judgment of the Will County Circuit Court dismissing counts III, IV, and V of plaintiffs' amended complaint.

Affirmed.

ALLOY and SCOTT, JJ., concur.