NEWMAN–GREEN, INC., et al., Plaintiffs,

v.

Alejandro ALFONZO–LARRAIN R., et al., Defendants.

82 C 7933.

United States District Court, N.D. Illinois E.D.

Aug. 3, 1984.

Rowe W. Snider, Michael D. Sher, Friedman & Koven, Chicago, Ill., for plaintiffs.

Michael P. Connelly, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On April 23, 1984 Newman-Green, Inc. ("NGI") moved, pursuant to various subparts of Fed.R.Civ.P. ("Rule") 12, against each count of the Amended Counterclaim ("Counterclaim," for convenience) brought by intervenor-defendant Newman-Green de Venezuela ("NGV"). This Court's oral bench ruling that day:

1. denied NGI's motion as to five of the Counterclaim's seven counts and

2. set for briefing NGI's Rule 12(b)(6) challenge to the remaining two counts.

For the reasons stated in this memorandum opinion and order, NGI's motion to dismiss Counterclaim Count IV is granted and its motion to dismiss Counterclaim Count VII is denied.

### Facts [1]

This litigation's underlying dispute concerns efforts by all parties to distribute NGI's product, aerosol valves, in Venezue-

---

**1.** For purposes of this motion, allegations of the Counterclaim are assumed to be true and are read in the light most favorable to NGV. See *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

la. NGV was formed by the other defendants in this action to manufacture and sell NGI aerosol valves in Venezuela. NGV entered into a "License Agreement" with NGI that included a promise by NGI to supply NGV with materials and expertise. For reasons as to which plaintiffs' current Amended Complaint ("Complaint") and the Counterclaim do not entirely agree, NGV's purpose was never carried out and it was forced to close its operation after various losses had been incurred. This lawsuit ensued.

Plaintiffs' Complaint comprises three counts:

1. In Count I NGI sues NGV's shareholders for breach of an alleged guaranty agreement imposing limited liability on them if NGV breaches its License Agreement.

2. In Count II NGI sues NGV itself for the price of parts and equipment ordered from NGI and delivered to NGV but never paid for.

3. In Count III NGI's affiliate Arnel, Inc. ("Arnel") sues NGV for breach of an equipment lease (which NGV claims was in substance an installment sale contract).

NGV's Counterclaim, directed exclusively against NGI, alleges NGI breached the License Agreement and warranties (Counts I and II), defrauded NGV in violation of state and federal law (Counts III–V) and interfered with NGV's business relations (Counts VI and VII). Because all the other counts survived NGI's Rule 12 attacks in this Court's April 23 oral ruling, only Counts IV and VII are now at issue:

1. Count IV alleges NGI violated Illinois' Consumer Fraud and Deceptive Business Practices Act (the "Act," Ill. Rev.Stat. ch. 121½, ¶¶ 261–272) by fraudulently inducing NGV to enter into the License Agreement. NGV's theory is akin to promissory fraud: NGI's allegedly false statements were to the effect it would adequately perform the License Agreement.

2. Count VII alleges NGI interfered with an advantageous business relationship between NGV and Arnel by causing Arnel to declare NGV in breach of the equipment lease (sued on in Complaint Count III) after an inadvertent failure by NGV to make a payment.

### Count IV

Act § 2 (Ill.Rev.Stat. ch. 121½, ¶ 262) by its terms covers "[u]nfair methods of competition and unfair or deceptive acts or practices" without any express limitation. However that section goes on to say:

> In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

Thus Illinois' Act is a "little FTC Act." Consequently, although Illinois courts are not *bound* by federal level decisions, they have construed the Act with reference to those decisions. See *Fitzgerald v. Chicago Title & Trust Co.*, 46 Ill.App.3d 526, 5 Ill.Dec. 94, 361 N.E.2d 94 (1st Dist.1977).

NGI argues the Act was not intended to reach isolated breaches of contract, such as the one asserted here, between parties neither of which is a consumer. NGI suggests if the Act did reach such garden variety breaches of contract, it would effectively supplant Illinois' common law of contracts and fraud, because it permits recovery more readily than that law in at least two respects:

1. Illinois courts have applied the Act to provide "broader consumer protection than does the common law of fraud," making actionable in that area "innocent misrepresentations," including "false promises" not pertaining to "existing material facts." See *Duhl v. Nash Realty Inc.*, 102 Ill.App.3d 483, 495, 57 Ill.Dec. 904, 914, 429 N.E.2d 1267, 1277 (1st Dist. 1981).

2. Act § 10a(c) (Ill.Rev.Stat. ch. 121½, ¶ 270a(c)) permits the court to award attorneys' fees to the prevailing party.

So, NGI contends, while the Act may have been "a decisive move on the part of the Illinois legislature to enact broad protective coverage of *consumers*" (*Duhl*, 102 Ill. App.3d at 495, 57 Ill.Dec. at 914, 429 N.E.2d at 1277, emphasis supplied), the legislature could not have intended it to apply to this case between businessmen, or by implication it would have replaced (and made more lenient) all contracts and fraud common law.

NGV responds the Illinois General Assembly has done exactly what NGI claims it could not have intended to do, for it passed an amendment effective October 1, 1973 extending standing to sue under the Act to "businessmen" as well as "consumers and borrowers." See *People ex rel. Scott v. Cardet International, Inc.*, 24 Ill. App.3d 740, 746, 321 N.E.2d 386, 391 (1st Dist.1974). Thus it accepts NGI's reductio ad absurdum at face value, rather than attempting to explain how NGV's own claim might be actionable while other everyday breach of contract and fraud claims are not.[2]

■ But there is considerable evidence the Act's 1973 amendment did not effect a replacement of Illinois' common law of contracts and fraud, as did the Field Code for California's. Cases applying the Act, while giving it broad scope, have framed its purpose and reach in terms of "broader consumer protection." See, e.g., *Duhl*, 102

Ill.App.3d at 495, 57 Ill.Dec. at 914, 429 N.E.2d at 1277. And courts faced with simple breach of contract claims between businessmen have always denied recovery under the Act. See, e.g., *Exchange National Bank v. Farm Bureau Life Insurance Co.*, 108 Ill.App.3d 212, 215–16, 63 Ill.Dec. 884, 887, 438 N.E.2d 1247, 1250 (3d Dist.1982).[3] In short, Illinois case law teaches the Act does *not* extend to all common law contract and fraud actions, so the question remaining is whether *this* action has characteristics bringing it within the reach of the Act.

*Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 447 N.E.2d 1007 (1st Dist. 1983), in holding the Act does not apply to sales of services by lawyers, spoke to the Act's availability to redress fraud and breach of contract in general. Citing *Exchange National Bank* and *Evanston Motor Co. v. Mid-Southern Toyota Distributors*, 436 F.Supp. 1370 (N.D.Ill.1977), *Frahm*, 113 Ill.App.3d at 585–86, 69 Ill. Dec. at 576, 447 N.E.2d at 1011 stated:

> Lastly, we do not interpret the liberal construction requirements to mean that liability under the Act is completely open-ended. Rather, we believe that the Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong.

That passage indicates there might be two ways in which Illinois courts could restrict the Act's application to simple tort and contract actions: by a "public injury" requirement or by a requirement that defend-

---

**2.** That statement perhaps oversimplifies NGV's position somewhat. While NGV denies it is obligated to do so, its Mem. 8–9 does argue it has alleged "competitive injury" and a "pattern or practice" of deception as NGI asserts it must do. But to make that claim NGV stretches those concepts so far it actually reinforces NGI's position that if the Act covers these events it covers all fraud and contract causes of action. See this Court's discussion below of whether the Counterclaim falls within the Act as narrowed by Illinois courts.

**3.** *M & W Gear Co. v. A W Dynamometer, Inc.*, 97 Ill.App.3d 904, 913–14, 53 Ill.Dec. 721, 730, 424 N.E.2d 356, 365 (4th Dist.1981) is not to the contrary. Although that case did reject a "public injury" requirement under the Act, the plaintiff there showed defendant had engaged in deceptive advertising practices, so the action was a consumer protection case within the core meaning of the Act.

ant's conduct "affect consumers generally."

Any "public injury" requirement is not uniformly applied in Illinois:

1. *M & W Gear Co. v. AW Dynamometer, Inc.*, 97 Ill.App.3d 904, 913–14, 53 Ill.Dec. 721, 730, 424 N.E.2d 356, 365 (4th Dist.1981) expressly rejected such a prerequisite.

2. *Frahm* cited with approval *Evanston Motor*, which found such a requirement does exist.

Were that difference in approach viewed as a direct conflict, it would place this Court in *Frahm*'s corner.[4] Moreover *M & W Gear* may have rested on an unnecessarily broad ground, for instead of holding there is no "public injury" requirement it could have held deceptive advertising as shown in that case gives rise to a conclusive presumption of public injury. See *Evanston Motor*, 436 F.Supp. at 1374–75 n. 6.[5] Finally, Judge McGarr's brief treatment of the issue earlier this week in *Overland Bond & Investment Corp. v. Mahoney*, No. 82 C 2283, slip op. at 12–13 (N.D.Ill. July 30, 1984) does not consider either *Frahm* or the weaknesses of *M & W Gear*'s analysis. Thus if this Court had to resolve the issue now, it would not be prepared to follow *M & W* and *Overland* automatically. More extended analysis would be necessary.

**4.** Under familiar *Erie v. Tompkins* analysis, operating through Illinois' internal choice of law rules, First District decisions such as *Frahm* are binding on this Court in the event of a conflict with cases from another District under the circumstances involved here. See *Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 195, 196–200 (N.D.Ill.1983).

**5.** It is quite possible defendant in *M & W Gear* sought to use the "public injury" requirement in an impermissible manner. There the jury had found defendant had employed deceptive advertising in trade publications servicing its market, causing a decline in sales for plaintiff, a competitor of defendant. On those facts defendant might have been contending it should have been permitted to show its product was in fact superior to plaintiff's, so the public was not injured by defendant's deceptive advertising. Surely a court's disinclination to permit such a defense should not necessarily be equated with an intention to permit the Act to supplement all state law fraud and contract claims.

This decision need not however rest on any "public injury" prerequisites, because another fatal flaw defeats Count IV: Under the Act an effect on consumers generally is required, and none is present here. *Frahm* referred to "practices of the type which affect consumers generally," while *Exchange National Bank*, 108 Ill.App.3d at 216, 63 Ill.Dec. at 887, 438 N.E.2d at 1250 required defendants' "practices to be part of a pattern of defendants' ... activities." However the requirement is worded, plaintiff must show defendant has engaged in deceptive practices in promoting its goods or services to its market in general. For example, a single course of deceptive conduct by a defendant toward a plaintiff was not enough in *Exchange National Bank* because consumer protection concerns were not implicated.

■ That concept is not at all inconsistent with the legislature's 1973 expansion of the Act: Certainly a fair reading of the amendment is that the General Assembly simply intended to grant businessmen standing to sue to redress competitive injury they suffer when other businessmen deceive customers.[6] It stretches things impermissibly to infer the amendment reflected a specific intent to treat business-

**6.** NGV Mem. 8–9 contends NGV has alleged competitive injury in Counterclaim ¶ 58, which states:

As a direct and proximate result of NGI's false and fraudulent conduct, NGV suffered losses in customers, damages to its trade name, losses in sales and consequently profits and, after a general decline in sales in the Venezuelan market, was forced to permanently shut down its operations.

NGV misunderstands competitive injury. It is not enough that a competitor be weakened even to the point of going out of business; competitive injury is an injury to the market in the sense that competition or at least fair competition is materially diminished. See *Products Liability Insurance Agency, Inc. v. Crum & Forster Insurance Cos.*, 682 F.2d 660, 663–64 (7th Cir. 1982). As for the proposition that Illinois law can protect a Venezuelan market, see n. 8.

men as direct "consumer"-type beneficiaries of the Act.

■■■ NGV's allegations cannot be read to accuse NGI of a pattern of deceptive activities in its market.[7] NGV Mem. 9 argues Counterclaim ¶ 57 meets the "pattern of activities" requirement by alleging:

> The foregoing misrepresentations were made by NGI as part of a scheme or artifice to defraud NGV....

This opinion has already made clear a scheme to defraud a single entity in a single course of dealing does not amount to a "pattern" of deceptive activities. NGV's Counterclaim Count IV must be dismissed without prejudice.[8]

### Count VII

■ Counterclaim Count VII sounds in tortious interference with advantageous business relations. NGI argues NGV cannot complain NGI caused Arnel to break business relations with NGV because, once NGV failed to make a payment under its equipment lease, NGV no longer had any enforceable contract with Arnel.

This Court has recently dealt with a similar argument in *Haupt v. International Harvester Co.*, 582 F.Supp. 545, 548–49 (N.D.Ill.1984). *Haupt*, 582 F.Supp. at 548 (along with cases cited therein) teaches:

Illinois law has long recognized not only the conventional tort of interference with contract rights but the related tort (with less stringent proof requirements) usually labeled interference with advantageous relationships or with business relationships or expectancies.

This Court went on to say it is permissible for a plaintiff (here counterplaintiff) to sue under the related tort of tortious interference with advantageous relations even when the asserted interference was with an unenforceable contract, so long as it can show the party with whom it had contracted would have been willing to continue to perform the contract if not for the defendant's tortious interference. NGV's pleadings do not negate the possibility of such a showing. NGI's motion against Counterclaim Count VII is denied.[9]

### Conclusion

NGI's Rule 12(b)(6) motion to dismiss Counterclaim Count IV is granted and that count is dismissed without prejudice. Its Rule 12(b)(6) motion to dismiss Counterclaim Count VII is denied.

---

7. If that is so then NGV's allegations also do not show "public injury," for to allege public injury a defendant must allege not only that some group broader than just the litigants is *affected* by a pattern of deceptive activities, but also that the group is *injured*.

8. NGI R.Mem. 5 n. 3 argues the Act does not apply so as to protect persons engaged in commerce outside Illinois. Indeed Act § 1(f) (Ill. Rev.Stat. ch. 121½, ¶ 261(f)) defines commerce in a geographically limited manner:

> The terms "trade" and "commerce" ... shall include any trade or commerce directly or indirectly affecting the people of this State.

However NGI employs the argument only in support of the existence of a "public injury" requirement. As an independent ground for dismissal *with* prejudice, it was raised too late and can be reasserted if NGV repleads Counterclaim Count IV.

9. NGI's reply as to Count VII, like its reply as to Count IV (see n. 8), contains a late-blooming flower. NGI urges that because Arnel is alleged to be affiliated with NGI and under its control, it cannot be liable for interfering with Arnel (R.Mem. 7 n. 6):

> The existence of separate affiliates and divisions should not be enough to convert a breach of contract by one into tortious interference by the other. The tort law clearly contemplates intermeddling by an independent third party.

This Court expresses no opinion on the validity of that argument, because it was raised after NGV no longer had an opportunity to respond. And even if the argument has legal force (*cf. Copperweld Corp. v. Independence Tube Corp.*, — U.S. —, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)) its viability may well depend on the precise relationship between NGI and Arnel—an issue of fact rather than of pleading. Denial of the motion to dismiss is thus without prejudice to possible reassertion of the argument on a proper factual showing (and hence in a proper procedural way).