STEVEN GOLEMBIEWSKI, Third-Party Plaintiff-Appellee, v. HALLBERG INSURANCE AGENCY, INC., Third-Party Defendant-Appellant.

First District (6th Division) Nos. 1—91—4127, 1—92—0261, 1—92—0262 cons.

Opinion filed March 4, 1994.—Modified on denial of rehearing June 10, 1994.

Kimberly G. Moss, of Moss & Hillison, of Chicago, for appellant.

No brief filed for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:
Jorja Widegren filed a suit against Steven Golembiewski for injuries sustained in an automobile collision. Golembiewski notified Hallberg Insurance Agency, Inc. (Hallberg), of the suit. Hallberg notified him that he was not covered. Golembiewski filed a third-party complaint against Mark Zintak and Hallberg alleging a breach of contract and a consumer fraud claim. Jorja Widegren settled her claim with the plaintiff, and her complaint was dismissed. Golembiewski dismissed Zintak from the case and the only defendant that remained was Hallberg. A jury trial was begun and the judge ultimately directed verdicts in favor of Golembiewski (hereafter, the plaintiff) on the breach of contract and consumer fraud claims. She

entered judgment in the amount of $6,811.03, which included the $4,000 amount that the plaintiff paid to Widegren, interest on a loan he took out to pay Widegren, and the cost of repairing his own car. On the consumer fraud claim, the trial judge did not make any separate award, but she did assess $4,000 in attorney fees against the defendant, based on section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121$^1$/2, par. 270a(c)). After denying the defendant's post-trial motion, the trial judge entered judgment against the defendant's law firm for $900, the amount assessed against it as a discovery sanction that remained unpaid.

The defendant contends that the trial judge erred in directing verdicts against it on both counts; that she abused her discretion in barring James Hallberg, the president of Hallberg, from testifying and in barring Hallberg from presenting a defense; that she erred in making two evidentiary rulings; that she abused her discretion in permitting the plaintiff to amend his complaint to conform to the proofs; that she erred in denying the defendant's motion to dismiss the consumer fraud claim; and finally, that she erroneously denied the defendant's petition for a change of venue. The plaintiff has not filed a brief.[1] The defendant waived oral argument in this court.[2]

In count I, the breach of contract claim, the plaintiff alleged the following: On August 3, 1988, he contacted Mark Zintak, who was associated with Hallberg, and "requested that he be bound with automobile insurance coverage." During the conversation, "Mr. Zintak advised the plaintiff that he could consider himself covered immediately and that he should send a check for $225 immediately. *** [A]t 7 a.m. the very next morning, [Thursday] August 4, 1988, [he] sent the check for $225 to Hallberg Insurance Agency. *** [T]wo days later, on [Saturday] August 6, 1988, [he] was involved in an automobile accident with Jorja D. Widegren."

The plaintiff further alleged that "on Monday, August 8, 1988, [he] contacted Mark Zintak of Hallberg Insurance Agency *** and advised him of the accident whereupon he was advised by Mr. Zintak that they had not received his check; therefore, his insurance

---

[1]Although no brief has been filed by the plaintiff-appellee, this court is not precluded from reviewing the case. This court elects to consider this case on the merits due to the importance of the issues presented. See *City of Springfield v. Ushman* (1979), 71 Ill. App. 3d 112, 388 N.E.2d 1357.

[2]After we set the case for oral argument, the defendant's attorney filed an emergency motion to waive oral argument and alleged that the attorney who drafted the defendant's brief had left the firm. We note that she rejoined the firm and drafted the petition for rehearing.

coverage had not come into effect yet"; that on August 4, 1988, he sent his check to Hallberg and "completed his contract with them"; and that Zintak's remarks to him on August 3, 1988, led him to "believe he was in fact covered by insurance from that moment forward." As a basis for recovery, he alleged that he was entitled to either "insurance coverage or indemnification from Hallberg Insurance Agency."

In count II, the consumer fraud claim, the plaintiff realleged the breach of contract allegations and added that the sale of insurance is a "service"; that he was a "consumer" under the Consumer Fraud Act; that Zintak told him that he was "bound"; and that the "acts and representations made by Mark Zintak of Hallberg Insurance were unfair and deceptive" in violation of the Act. He alleged that he was entitled to "damages, reasonable fees and court costs" under the Act. As relief he requested that he be awarded judgment in an amount equal to Widegren's recovery, attorney fees and costs, and any other relief.

■ The defendant contends that the trial judge should have granted its motion to dismiss the consumer fraud claim. The defendant argues that the plaintiff failed to allege "proof of public injury," an element that the defendant maintains was "required" for any consumer fraud claim filed in 1988. The defendant insists that "proof of public injury" is required because courts consistently have held that the consumer fraud remedy was intended to reach practices of the type which "affect consumers generally" and is not available as an additional remedy to redress a purely private wrong.

On January 1, 1990, an amendment to the Consumer Fraud Act became effective which provided: "Proof of public injury, a pattern, or an effect on consumers generally shall not be required." (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 270a(a).) The defendant concedes that proof of public injury was no longer required after the effective date of the amendment, January 1, 1990, but insists that the plaintiff was required to plead this element in 1988 when he originally filed his complaint.

In *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.* (1992), 240 Ill. App. 3d 360, 608 N.E.2d 178, this court held that proof of public injury was not required for a consumer fraud claim based on acts committed before 1990 because the 1990 amendment merely clarified, rather than changed, existing law. (See also *Zinser v. Rose* (1993), 245 Ill. App. 3d 881, 614 N.E.2d 1259.) We conclude that the trial judge correctly denied the defendant's motion to dismiss.

■ Before trial, the judge imposed sanctions against the defen-

dant, under Supreme Court Rule 219(c). (134 Ill. 2d R. 219(c).) The judge barred James Hallberg from testifying; barred Hallberg from presenting a defense; and ordered the defendant's law firm, Moss & Hillison, to pay $900 to the plaintiff's attorney for time spent at a deposition. The defendant contends that the trial judge abused her discretion in imposing any sanctions and that the sanctions were too harsh. The trial judge heard arguments on the motion to impose sanctions before entering her order.

As a result of the petition for rehearing we have been required to read the depositions of Mark Zintak, an agent for Hallberg, and James Hallberg. It would unduly lengthen this opinion to repeat in detail all that transpired at those depositions. It is enough to say that the conduct of Robert Hillison, the attorney for the defendant, represented discovery practice at its worst. Both depositions, particularly the deposition of Hallberg, are riddled with frivolous objections by Hillison and his improper instructions not to answer questions. His termination of the deposition of Zintak by telling the court reporter to leave and telling the plaintiff's attorney to "get the hell out of [his] office" was unjustified. His obstructive tactics at the deposition of Hallberg justified the plaintiff's attorney's termination of Hallberg's deposition. We conclude that the trial judge did not abuse her discretion in imposing the sanctions that she did. The discovery sanctions and judgment for $900 against Moss & Hillison are affirmed.

The defendant next contends that the trial judge should not have directed verdicts in favor of the plaintiff. The plaintiff testified that he was 19 years old when he called Hallberg in 1988. He purchased a 1985 Chevrolet Camaro in July 1988 for $9,200. He received a loan for the car from USA Consumer Credit Corporation. Before he purchased the car, he thought that he was insured on his father's policy (with Kemper) for the family car. His father procured his policy through Hallberg.

On July 25, 1988, he called Mark Zintak at Hallberg. He received Zintak's phone number from his father. He called Hallberg because he "was previously *** insured with them under [his] family car policy." When he called, he spoke to Zintak. The plaintiff testified that Zintak took down his "information *** driver's license number, and [so] forth, address." Zintak sent the plaintiff an application in the mail. Zintak told him to fill in the "markings, the gold, the highlighted areas."

The plaintiff called Zintak on August 3, 1988. He testified that he told Zintak, "[T]he lady from the finance company had called and that I would have to have insurance today. *** I told him that I must

have insurance today, I must be binded. I did not know what binded was"; that he wanted to be affiliated with Kemper; and that he needed "insurance liability coverage." He told Zintak that he financed the vehicle and that the finance company insisted that he be insured on August 3, 1988. He also told Zintak, "If I was not able to be bound that day, I was supposed to look for another insurance company."

After he told Zintak of his need to become bound, Zintak told him that "he would have to talk to his superiors." Zintak then placed the plaintiff's call on hold. When Zintak returned to the line, Zintak "told [him he] was bound." Zintak then told the plaintiff that he "had to fill in the highlighted areas on the application and send him a check *** [for] $225." He told Zintak that he would send the application and check to him on the morning of August 4, 1988. The entire phone call lasted 11 minutes.

The plaintiff testified that he sent the check at 7 a.m. on the morning of August 4, 1988. On the application, he only filled in the highlighted portions; he did not know who filled in the rest of the information on it. At trial, he looked at the application and noted that there was another signature by the line marked "producer."

The plaintiff identified the envelope in which he sent the application and check; the envelope was postmarked with the date "August 4, 1988." He also identified his check for $225, dated August 4, 1988. (Both exhibits were received into evidence.) He looked at the back of his check and testified that the check was cashed on August 11, 1988. The plaintiff also testified that Zintak did not tell him that it was "unacceptable" for the plaintiff to send the application and check on August 4, 1988. On August 6, 1988, the plaintiff was involved in an automobile accident. On August 8, 1988, the plaintiff called Zintak to make a claim. He told Zintak that he "had an accident and he [Zintak] put me on hold." When Zintak returned, he told the plaintiff that he "was not insured for the accident." When the plaintiff asked Zintak about his conversation with him on August 4, 1988, when Zintak told him that he was bound, Zintak "shook it up."

The plaintiff testified that he received a complaint for a lawsuit, arising from his accident, on August 18, 1988. As a result of the accident and failure to carry insurance, his driver's license was suspended. He paid plaintiff Widegren $4,000; he took out a loan to pay her. He paid over $700 in interest on that loan. He also paid $1,886.03 for repairs to his own car.

On cross-examination, the plaintiff stated that he purchased temporary or "three day insurance" through the automobile dealership when he purchased the car on July 23, 1988. He first called Zintak on July 25, 1988, but did not tell him that he had only

temporary insurance on the car. He decided to call Hallberg or Zintak because his father recommended that he do so. His father had been doing business with them for at least two years; he did not know exactly how long. He told Zintak that he wanted a Kemper policy. Zintak told him that Kemper would be the best coverage for the best money because he would receive a multi-car rate for the family. He never told Zintak that he wanted any policy other than a Kemper.

When he called the automobile dealership on August 3, 1988, to inform it that he had procured insurance, he told it that Kemper was his insurance company and Hallberg was his agent. He told the dealership that he was bound on August 3, 1988; that he had coverage for liability and collision; and that the policy was with Kemper. The dealership did not ask him the number on the policy; rather, the plaintiff gave it Zintak's phone number. He admitted that the document he completed and sent to Zintak was an application for insurance.

After Zintak told him that he was not covered, he did not stop payment on his check. He eventually obtained another policy through Hallberg, a policy from Prestige. He did not know the date on which he obtained coverage from Prestige. He did not recall receiving a binder from Kemper but he did receive one from Prestige.

On redirect, the plaintiff stated that he never asked Hallberg to obtain a Prestige policy for him. From July 26, 1988, the date on which the three-day policy terminated, until August 3, 1988, he did not drive his car because it was not insured.

Patrick Nolan, an insurance agent since 1978, testified as the plaintiff's expert witness. He testified that he was familiar with the practices of the insurance agency industry in September 1988. He based his expert opinion on the contents of the Hallberg "file" and his conversation with the plaintiff. In his opinion the plaintiff should have been bound on August 4, 1988, when he signed the application and mailed it. He further testified that it was standard procedure to bind prospective insureds over the phone in August 1988. It was also standard procedure to request and review a motor vehicle report from the Secretary of State's office. He stated that a standard contract between an insurance agency and a carrier was based on a contingency, *i.e.*, a bonus that the insurance company pays to an agency.

On cross-examination, Nolan stated that, under account current or direct bill bases, Hallberg would have received a commission for producing the plaintiff's business regardless of whether the policy came from Kemper or Prestige. He did not know what Hallberg's percentage of premium volume was in 1988. He did not speak with

Mark Zintak in formulating his opinion. He did not base his opinion on the underwriting contract between Hallberg and Kemper; he did not know what Kemper's contract with Hallberg entailed in 1988. He stated that it was common for brokers to make binders over the phone in 1988 for automobile insurance; he did it for Kemper, Travelers, Hartford, American States, and American Country. He did not know if Hallberg could call the company and receive approval for an oral binder.

On cross-examination, he also stated that, to bind persons over the phone, he would need their driving record, their type of vehicle, and whether they had prior accidents. They would be required to send payment; some companies would bill the insured directly or an agency could send in an application "bound" and the company would bill the insured. Nolan's companies require a check with the application. He would not type "binder" on a personal auto policy because the application acts as a binder in many cases. Nolan did review the plaintiff's application in forming his opinion.

The defendant contends that the trial judge erred in directing a verdict for the plaintiff on both claims. Under the *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, standard, it is proper to direct a verdict for the plaintiff at the close of all evidence when the plaintiff has made a case and there is no evidence contradicting or tending to contradict plaintiff's evidence on that issue. (*Szarat v. City of Chicago* (1983), 117 Ill. App. 3d 809, 454 N.E.2d 68.) We will review the propriety of the directed verdicts of each claim separately.

The defendant contends that the trial judge should not have taken the case from the jury because the testimony presented a factual dispute and credibility assessment. The defendant argues that the plaintiff's testimony about Zintak's requirements for becoming bound was conflicting and that the plaintiff's testimony about his need for collision or liability insurance was equivocal. The defendant stresses that under the *Pedrick* standard, if there exists a substantial factual dispute or where the assessment of a witness' credibility and the election between conflicting evidence may be decisive, a directed verdict is inappropriate, citing *Anderson v. General Grinding Wheel Corp.* (1979), 74 Ill. App. 3d 270, 393 N.E.2d 9. We note that a "substantial" factual dispute must exist to make a directed verdict inappropriate.

■ The defendant first contends that the plaintiff knew that the application was not a contract; that there were notes on the application that stated that processing procedures were involved before he would be entitled to insurance; and that he never received a binder in the mail from Hallberg. The plaintiff's theory, however,

was that Zintak communicated an oral binder over the phone. Regardless of whether the plaintiff may have known that the application was not a contract and that processing procedures were involved, the plaintiff presumed that Zintak's oral binder was effective.

Second, the defendant contends that the plaintiff wavered about whether he had collision or liability insurance. On direct examination, he testified that he needed "insurance liability coverage." On cross-examination, he stated that he told the auto dealership that he procured liability and collision coverage. It appears that he clarified his answer on cross-examination that he needed both collision and liability coverage.

Third, the defendant argues that the plaintiff's testimony about when and how he was bound was "inconsistent." On direct examination, he testified that Zintak told him he was bound immediately (on August 3, 1988) and that he was required to fill out the application and send him a check. On cross-examination, he stated that he was bound when he sent Zintak the application and the check on the morning of August 4, 1988. Regardless, he was bound before the accident on August 6, 1988, and any "inconsistency" does not alter the outcome of this case.

Finally, the defendant claims that the plaintiff failed to present any evidence that Zintak was an agent of Hallberg or that Zintak possessed any authority to bind the plaintiff. In its brief the defendant correctly focuses on the controlling factual issue:

"Plaintiff's claim for relief *** is based primarily upon an alleged conversation which took place on August 3, 1988 between the Plaintiff and Mark Zintak. During this conversation Zintak allegedly told the plaintiff that he *was bound* with insurance as of that date. *** Defendant denied this allegation. ***

As was previously raised and argued in this brief, Plaintiff failed to present any evidence that Zintak was an agent of the Defendant Hallberg or, even if he was, that he had any authority to bind the Plaintiff." (Emphasis in original.)

Our answer to the defendant's argument may be briefly summarized:

1. The defendant's answer to the complaint admitted that Zintak was an "agent associated" with Hallberg.

2. During the trial, colloquy occurred between the judge and counsel from which it is apparent that Robert Hillison, the defendant's attorney, accepted the fact that Zintak was an agent of Hallberg.

3. When Hillison argued on his motion for a directed verdict and

against the plaintiff's motion for a directed verdict, he never raised this argument. Consequently, we would be justified in considering this argument waived.

4. The denial in the defendant's answer that Zintak told the plaintiff he was bound does not countervail the plaintiff's sworn testimony.

5. Acceptance of the defendant's argument that the plaintiff was required to show that Zintak had actual authority to bind the plaintiff would make hash of the doctrine of apparent authority. See *State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 583 N.E.2d 547.

The record establishes that Zintak was Hallberg's agent, that he had apparent authority to bind the plaintiff and that Zintak told the plaintiff he was bound before the accident. The trial judge did not err when she directed the verdict on count I.

Before leaving this point, we wish to express our strong disapproval of the defendant's even making this misleading argument. At Zintak's deposition he expressly testified that he was Hallberg's agent.

The defendant also claims that there was insufficient evidence to support a directed verdict in favor of the plaintiff on the consumer fraud claim. We agree. In count II of the complaint, the plaintiff alleged that Zintak was an "insurance agent associated with Hallberg Insurance Agency, Inc."; that Zintak told him that he was bound; that the "acts and representations made by" Zintak were "unfair and deceptive and in violation of" the Consumer Fraud Act. As relief, he requested that he be awarded judgment in an amount equal to Widegren's recovery, his attorney fees and costs, and any other relief. That is the extent of his allegations for his consumer fraud claim. At trial, the plaintiff did not present any additional evidence on the consumer fraud claim, other than the evidence for the breach of contract claim.

■ Most recently this court in *Jones v. Universal Casualty Co.* (1994), 257 Ill. App. 3d 842, 855, repeated the requirements for a claim premised on an "unfair" practice:

> "In *Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312, this court adhered to the view of the Second District as expressed in *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924, in which the court adopted the criteria outlined in *Federal Trade Comm'n v. Sperry & Hutchinson Co.* (1972), 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898, in considering alleged violations of the Consumer Fraud Act. We held that in order to establish an unfair practice under the

Consumer Fraud Act the plaintiff was required to prove that the complained of practice offended public policy as it had been established by statutes, the common law or otherwise *and* that the practice was immoral, unethical, oppressive or unscrupulous; *and* that it caused substantial injury to consumers." (Emphasis in original.)

It appears that the crux of the consumer fraud claim is that Zintak's oral binder, as an agent of Hallberg, and the subsequent denial of coverage constituted a "practice" that offended public policy. However, there was no evidence at trial that Zintak's "acts or representations" amounted to immoral, unethical, oppressive or unscrupulous practices or that Hallberg's *repeated* "practice" caused substantial injury to consumers. Indeed, there was no evidence of any repeated practice on behalf of Hallberg.

■ Rather, the plaintiff merely presented evidence to support a breach of contract claim and then sought the same or additional relief under the Consumer Fraud Act, namely attorney fees. Every individual breach of contract between two parties, however, does not amount to a cause of action cognizable under the Act and the Act should not apply to simple breach of contract claims. (*Bankier v. First Federal Savings & Loan Association* (1992), 225 Ill. App. 3d 864, 588 N.E.2d 391.) If the Act did apply, then common law breach of contract actions "would be supplemented in every case with an additional and redundant remedy." (*Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 216, 438 N.E.2d 1247, 1250.) Although the Act applies to insurance companies (*Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312), it is not without limits. The plaintiff has not shown that the defendant's repeated practice is to bind insureds orally and then repudiate the binder. In the absence of any evidence about the defendant's practice, other than this isolated breach of contract claim, the directed verdict in favor of the plaintiff on the consumer fraud claim must be reversed.

■ The defendant contends that the trial judge erroneously permitted the plaintiff to testify about Zintak's statement to the plaintiff that he was bound, because it amounted to hearsay without satisfying the requirements of an "admission by an agent" exception to the hearsay rule. The exception provides:

"[I]n order to introduce a statement or act by an agent or employee as an admission it must *first* be shown (1) that he was such an agent or employee [citation], (2) that such statement or act was made or done in and about a matter of which he had actual or apparent authority [citation], and (3) that he spoke or acted under

or by virtue of his authority as such agent or employee [citation]." (Emphasis in original.) *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 42, 343 N.E.2d 207, 210.

For reasons previously explained, we hold that the record established that Zintak was Hallberg's agent; that he had apparent authority to bind the plaintiff; and that he acted or spoke by virtue of his authority as an agent. The evidence was properly admitted.

■ The defendant contends that the trial judge should have permitted defense counsel to cross-examine the plaintiff's expert about the insurance application, upon which the expert relied in forming his opinion. Specifically, the defendant contends that his counsel should have been able to ask the expert whether the insurance application stated on its face that it was a "binder." The trial judge sustained the objection on the ground that the content of the application was hearsay.

After reviewing the entire transcript, it appears that the trial judge treated the underlying facts and data in the insurance "file" as hearsay during the expert's direct and cross-examination. Although the underlying facts and data may be hearsay, our supreme court has concluded that an expert should be allowed to reveal the contents of materials upon which he reasonably relies in order to explain the basis of his opinion, both on direct and on cross-examination. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322 (adopting Federal Rules of Evidence 703 and 705).) Rule 705 explicitly states that, on cross-examination, the expert may be required to disclose the underlying facts or data which support his opinion. Rule 705 was enacted to eliminate the need for the hypothetical question and to place the burden for eliciting the facts upon which an expert opinion is based on the cross-examiner. *Wilson*, 84 Ill. 2d at 194-95; *People v. Anderson* (1986), 113 Ill. 2d 1, 495 N.E.2d 485 (expert, on direct examination, should be allowed to reveal the contents of material upon which he reasonably relies in order to explain the basis of his opinion).

Defense counsel attempted to show that the insurance application did not state that an applicant was bound when he signed it. It appears that the trial judge should have permitted defense counsel to ask expert Nolan about any statements on the application because Nolan relied on it in formulating his opinion. However, whether the denial of an opportunity to ask the expert this question amounts to reversible error depends, in large part, on the degree of prejudice the defendant suffered. We have concluded that Zintak, as Hallberg's apparent agent, communicated an oral binder to the plaintiff and that the evidence supported a breach of contract claim. Any written

statements on the insurance application, therefore, would not alter the existence of an oral binder or affect the plaintiff's breach of contract claim. Thus, any error in sustaining the objection did not prejudice the defendant to the extent that a new trial is warranted.

■ The defendant contends that the trial judge abused her discretion in permitting the plaintiff to amend his complaint to conform to the proofs at the close of the evidence. In the original complaint, the plaintiff sought indemnification for any payment to plaintiff Widegren, based on the defendant's alleged breach of contract for insurance. He requested in the complaint, "1. Insurance Coverage, or 2. Indemnification from Hallberg Insurance." The original complaint did not request, as relief, damages for the plaintiff's own car repair. During a motion *in limine*, the plaintiff's attorney sought to include his car repair bill as part of his overall damages for the breach of contract claim. After repeated objections were made by defense counsel, the trial judge stated, "Well, let's see how it comes up. See if there is proper evidence."

During the plaintiff's direct examination, he testified, without objection, that his car bill totalled $1,886.03. After the plaintiff rested, plaintiff's counsel moved to amend the complaint in conformance with the proofs. Defense counsel objected on the basis of surprise but the trial judge rejected that argument and granted the motion; she said:

> "I think there is sufficient evidence here for notice, that is required by law, to recite the facts of the transaction between the plaintiff and the defendant; it's sufficient to establish the relationship that existed between them by law. And it does state that as a result of his actions, he was involved in an accident and he was sued and that he did not have insurance. So it's alleged there is a breach of the duty. The only thing he has not alleged are the specific damages, which the law would allow him to do anyway."

A trial judge has broad discretion in permitting a motion to amend pleadings before entry of final judgment. (*Starnes v. International Harvester Co.* (1989), 184 Ill. App. 3d 199, 539 N.E.2d 1372.) The factors to consider in evaluating the trial judge's discretion in allowing a motion to amend pleadings are: (1) whether the proposed amendments would cure the defective pleadings, (2) whether they would cause prejudice or surprise to the defendants, (3) the timeliness of the proposed amendments, and (4) whether previous opportunities to amend the pleadings could be identified. (*Starnes*, 184 Ill. App. 3d at 205.) The defendant may not claim that the amendment "surprised" him because he knew that the plaintiff asked to amend the claim during the motion *in limine*, but that the trial judge took a

"wait and see" approach. In fact, the defendant first received notice about the car damage in June 1989 when the plaintiff responded to the defendant's interrogatories about car damage. The auto repair bill was presented during the plaintiff's direct examination, without objection. The relief was necessary to encompass all claimed damage as a result of being denied collision and liability coverage. We cannot say that the trial judge abused her discretion in permitting the amendment before final judgment.

■ Finally, the defendant contends that the trial judge erroneously denied its petition for a change of venue. The petition, however, was not verified by an affidavit of the applicant, as required by statute. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1001.) In its petition for rehearing the defendant maintains that Hillison's certification was sufficient. Whether the defendant's argument is correct, we need not decide because another clear basis for denying the petition exists.

The petition for change of venue was presented to Judge Douglas on July 30, 1990; it was filed with the clerk on the same day. There is no evidence in the record that the plaintiff received any notice of the petition. The change of venue statute states, "The application may be made to the court in which the case is pending, reasonable notice thereof having been given to the adverse party or his or her attorney." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1001(e).) In this case, there is no transcript of the hearing when the petition for change of venue was presented; there are two bystander reports, one submitted by the plaintiff and one by the defendant. The bystander's reports indicate that, on July 30, 1990, defendant's motion for sanctions, which was filed on June 8, 1990, was scheduled to be heard and that Hillison "was insistent that his motion for change of venue be heard prior to the discovery motion." It is clear that the plaintiff received notice of the motion for sanctions, but there is no evidence that Hillison gave any notice for the petition for change of venue; rather, the record indicates that he filed it on that day, July 30, 1990.

In *Dobrofsky v. Richard J. Prendergast, Ltd.* (1990), 207 Ill. App. 3d 19, 565 N.E.2d 243, this court held that a denial of a petition for change of venue was not improper absent any record of any attempt to notify the adverse party prior to the hearing itself. In that case, Judge Gillis sat in for Judge O'Brien on a hearing for summary judgment. The defendant presented a motion for change of venue immediately before the hearing. Judge Gillis denied the petition. This court noted that the statute required reasonable notice of the motion be given to the adverse party and that there was no report of proceedings from the hearing contained in the record. This court affirmed the trial judge's denial of the petition because there was no

record of any attempt to notify the adverse party of the petition before the hearing itself.

The record in this case also indicates that Hillison based his allegation of prejudice on Judge Douglas' remarks made about Hillison in another case; the remarks were made before May 3, 1990. On May 3, 1990, Judge Douglas granted a petition for a change of venue in that other case. Thus, Hillison knew of Judge Douglas' alleged prejudice on or before May 3, 1990, but he did not give any notice of his intent to file a petition for a change of venue in this case until the day of the hearing for sanctions, July 30, 1990. In fact, Hillison appeared before Judge Douglas on his own motion for sanctions, which he filed on June 8, on June 21 and July 5, 1990, but he did not file any petition for a change of venue on those dates.

On June 21, 1990, Hillison appeared on the plaintiff's motion to compel discovery and to permit him to complete the deposition of Zintak. The plaintiff's attorney alleged that he had been assaulted by Hillison. His motion asked for leave to file an affidavit of the court reporter and an audio cassette of the deposition. The motion was continued to July 5. On July 5, the motion was continued until July 30. On July 24, 1990, the plaintiff's attorney filed his motion to compel which included a copy of the Zintak deposition transcript and the affidavit of the court reporter. Hillison had nearly 60 days to file a petition and give notice, but instead he waited until the same day of the hearing to file the petition. (See *Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 397 N.E.2d 84 (party became aware of judge's alleged prejudice but did not give notice of intention to petition for change of venue; party did not give notice until day of hearing when petition was presented; appellate court affirmed trial judge's denial of petition).) Judge Douglas did not err when she denied the petition for change of venue.

For the foregoing reasons, the directed verdict in favor of the plaintiff and judgment for $6,811.03 on the breach of contract claim is affirmed; the directed verdict in favor of the plaintiff and judgment for $4,000 in attorney fees on the consumer fraud claim is reversed; and judgment in the sum of $900 against the firm of Moss & Hillison as a discovery sanction is affirmed.

Judgment affirmed in part; reversed in part.

McNAMARA and GIANNIS, JJ., concur.