**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230153-U

Order filed February 6, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| ERICA LAFORTE, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal Nos. 3-23-0153 & 3-23-0305 |
| EXPEDIA, INC. and PARK HOTELS AND | ) | Circuit No. 22-SC-1445 |
| RESORT, INC. d/b/a HILTON HOTELS, | ) | |
| | ) | |
| Defendants | ) | The Honorable |
| | ) | Thomas A. Else, |
| (Expedia, Inc., Defendant-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court erred when it found that the plaintiff had met her burden of proof on her common-law fraud claim against the defendant.

¶ 2     The plaintiff, Erica LaForte, sued the defendant, Expedia, Inc., in small-claims court for breach of contract and fraudulent inducement.  After a bench trial, the circuit court found in favor of LaForte on her fraud claim and awarded compensatory and punitive damages.  On

appeal, Expedia argues that the court erred when it found LaForte's fraud allegation proven and when it awarded punitive damages. We reverse.

¶ 3                                      I. BACKGROUND

¶ 4        In March 2022, LaForte filed a civil complaint against Expedia and Park Hotels and Resort, Inc. (d/b/a Hilton Hotels). The complaint alleged that Expedia breached a contract with LaForte and fraudulently induced her into booking a hotel stay through Expedia "on the basis that the cancellation policy was for only one night's charge" and was otherwise refundable. LaForte sought $1,708.44 in compensatory damages, as well as punitive damages.

¶ 5        Attached to the complaint was a document purportedly printed off Expedia's website containing LaForte's itinerary. The document stated that LaForte had booked a hotel room at the Hilton Boston Back Bay for February 14-20, 2022, for a total of $1,708.44. The "Change and cancellation rules" were provided to Expedia by the hotel and were included on Expedia's website as follows:

>    "Free cancellation until February 11 at 11:59 PM (Eastern Standard Time (US & Canada)
>
>    We understand that sometimes plans fall through. We do not charge a cancel or change fee. When the property charges such fees in accordance with its own policies, the cost will be passed on to you. Hilton Back Bay charges the following cancellation and change fees.
>
>    Cancellations or changes made after 11:59pm (Eastern Standard Time (US & Canada)) on February 11, 2022 or no-shows are subject to a property fee equal to the first nights [*sic*] rate plus taxes and fees."

¶ 6     The circuit court allowed limited discovery.  The discovery materials included a lengthy recitation of the terms of use (TOU) for Expedia's website.  A user of Expedia's website was required to agree to the TOU, which stated, among other things, the following:

> "You may cancel or change your prepaid hotel reservation, but you will be charged the cancellation or change fee indicated in the rules and restrictions for the hotel reservation. If you do not cancel or change your reservation before the cancellation policy period applicable to the hotel you reserved, which varies by hotel (usually 24 to 72 hours) prior to your date of arrival, you will be subject to a charge equal to applicable nightly rates, tax recovery charges and service fees. In the event you do not show for the first night of the reservation and plan to check-in for subsequent nights in your reservation, you must confirm the reservation changes with us no later than the date of the first night of the reservation to prevent cancellation of your reservation.

> You agree to pay any cancellation or change fees that you incur. In limited cases, some hotels do not permit changes to or cancellations of reservations after they are made, as indicated in the rules and restrictions for the hotel reservation. You agree to abide by the Terms of Use imposed with respect to your prepaid hotel reservations."

¶ 7     Based on his investigation, LaForte's attorney determined that Park Hotels had not received any money associated with the hotel reservation, so he nonsuited Park Hotels.

¶ 8     The circuit court held a bench trial on LaForte's complaint on February 23, 2023.  Of note during opening statements was that LaForte's attorney stated his intention to amend the complaint to add an additional count under the Consumer Fraud and Deceptive Practices Act.

3

¶ 9          LaForte testified that she used Expedia to book hotels, flights, and car rentals monthly over the past 10 years.  Regarding the hotel booking at issue, LaForte stated that she planned to attend a convention in Boston and sought to book her hotel several months in advance.  While searching on Expedia's website, she selected the option for refundable reservation "because I know that my travel is often subject to change."  Ultimately, she booked a room with the Hilton Back Bay hotel in Boston.  She acknowledged that she understood that she could cancel or change her reservation up until February 11, 2022, at 11:59 p.m. Eastern Standard Time and that if she did so after that date and time, the policy accompanying her reservation stated she would be subject to the first night's rate plus taxes and fees.  LaForte stated that her credit card was charged by Expedia for the reservation on November 12, 2021, in the amount of $1,468.44.

¶ 10          LaForte testified that she called Expedia to change her reservation on February 10, 2022, but was disconnected.  She called again on February 12 but was disconnected again.  She called a second time that day and spoke with an Expedia representative.  She told the representative that she wanted to change her reservation from February 14-20 to February 16-18.  LaForte stated that she did not receive any confirmation email about the change, even though the representative stated such an email would be sent.

¶ 11          LaForte called Expedia again the next day to verify the change was made.  She did not mention anything on the stand about the result of that call.

¶ 12          She stated that she contacted Expedia again on 16th—this time, by virtual chat and with the purpose of cancelling the reservation.  Expedia apparently tried to reach the hotel but was unsuccessful.  Expedia told her that they would try to contact the hotel again and would get back to her by email within 72 hours.

4

¶ 13     LaForte called Expedia again on the 17th to confirm the cancellation but was told to call the hotel directly. Thereafter, LaForte contacted the hotel but was told that Expedia was the entity responsible for issuing a refund.

¶ 14     LaForte received an email from Expedia on March 1 stating that the hotel refused to issue a refund. Accordingly, LaForte was instructed to contact the hotel about the matter.

¶ 15     LaForte further testified that her attorney investigated the matter and determined that the hotel claimed that they never received any of LaForte's reservation amount.

¶ 16     On cross-examination, LaForte stated that she had used Expedia hundreds of times and understood that by doing so, she consented to the TOU. She acknowledged that the TOU contained statements such as "The Expedia Companies and the Expedia Partners have no liability and will make no refund in the event of any delay, cancellation, overbooking, strike, force majeure or other causes beyond their direct control." She further admitted that the TOU stated that Expedia was not responsible for making refund decisions on behalf of hotels.

¶ 17     Jamie Labaire testified that she was an area manager for Expedia's Chicago hotel supply team. She confirmed that Expedia did not control the hotel reservation policies listed on its website. She also read into the record the above-quoted paragraph from the TOU regarding changing or cancelling hotel reservations.

¶ 18     Labaire also described the process by which a hotel like Hilton Boston Back Bay received their money after an individual booked a reservation through Expedia:

"they would receive an individual use credit card, so on the day that the customer is scheduled to arrive at the property based on their booking, all the funds would be provided to the hotel through a credit card to retrieve those funds; and once the booking has started, the only way for those funds to be returned back is for the

5

hotel to initiate creating a case with Expedia and requesting to refund the money back to the traveler." Labaire stated that the funds Expedia received from LaForte would have been transferred to the individual-use credit card on the morning of February 14. She also testified that the decision of whether to issue a refund to LaForte rested entirely with the hotel.

¶ 19        On cross-examination, Labaire admitted that it was reasonable for individuals to rely on change-and-cancellation policies from hotels that Expedia posted on its website. Regarding LaForte's reservation funds, Labaire clarified that she did not know if the hotel had removed the funds from the individual-use credit card or if the funds were still sitting on the card. She had personally looked up the reservation in Expedia's system and saw that the funds had been placed onto the individual-use credit card. However, she admitted that no documentation of that fact was disclosed during discovery.

¶ 20        Of note during closing arguments was LaForte's attorney again stating his intention to proceed "under both common law fraud and the consumer fraud act." The court interrupted him, however, and stated, "your request to proceed under the consumer fraud act is denied, because that's not the complaint, what the complaint says. However, you are allowed to proceed under common law fraud, so go ahead."

¶ 21        While multiple exhibits were admitted into evidence during the trial, no volume of exhibits appears in the record on appeal.

¶ 22        In March, the circuit court issued its written order in favor of LaForte. The court found that Expedia "either knew or acted with reckless disregard as to the truth or falsity of the statements made on its own website" and that LaForte had proven each of the elements of common law fraud. The court also found that punitive damages were appropriate:

6

"The defendant took the plaintiff's money with speed and efficiency, caused her to expend enormous amounts of time on telephone calls and emails trying to remedy the situation and then, not only did not refund the money that it took, but stated that it did not know what happened to it."

The court awarded actual damages of $1,223.70, court costs of $506.62, and punitive damages of $7,822.21.

¶ 23 Expedia appealed.

¶ 24 II. ANALYSIS

¶ 25 On appeal, Expedia argues that the circuit court erred when it found that LaForte proved the elements of common-law fraud by clear and convincing evidence.

¶ 26 We will not disturb a circuit court's decision after a bench trial unless it is against the manifest weight of the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). "A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the judgment is arbitrary, unreasonable, or not based on evidence." *In re Estate of Coffman*, 2023 IL 128867, ¶ 56.

¶ 27 "Fraud may be perpetrated by fraudulent misrepresentation or by fraudulent concealment." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 803 (2005). The elements of a common-law fraud claim are: "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130570, ¶ 15.

7

¶ 28    Expedia's argument focuses on the second element, claiming that LaForte presented no evidence that it acted knowingly or with reckless disregard for the truth when it posted the hotel's change and cancellation policy. LaForte counters that Expedia's "statements and actions establish, at the least, culpable ignorance as to the truth of their statements."

¶ 29    Notably, common-law fraud cases have discussed the improper conflation of promises to perform with common-law fraud: "a promise to perform an act in the future by one who intends not to perform is not actionable fraud, unless the false promise of future performance is part of a scheme or device to defraud another of her property." *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 940 (1997); see also *Chatham*, 356 Ill. App. 3d at 804-05 (citing *Mitchell* and also noting the *Chatham* plaintiff's acknowledgement that "promises of future conduct, even if made without a present intention to perform, do not constitute fraud").

¶ 30    In this case, the evidence presented at trial established that Expedia posted the hotel's change and cancellation policy on its website. No evidence was even presented to show that the policy constituted a false statement, much less one from which a person could reasonably conclude, or even infer, that Expedia posted the policy without intending to apply it. Certainly, no evidence was presented that Expedia was engaged in some type of scheme to defraud LaForte of her property. Rather, the evidence showed only that LaForte did not receive a refund in accordance with the posted policy, which, without more, is not evidence of Expedia posting a false statement with knowledge of, or reckless disregard for, its falsity. The conduct in this case may be actionable under some other legal theory, such as the additional theory LaForte included in her complaint but later abandoned. But there was no evidence presented in this case to show that the conduct satisfied the elements of common-law fraud.

¶ 31　　This reasoning has also been applied in other, not completely unrelated contexts. For example, in a case involving the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1998)), our supreme court held that a breach of a contractual promise was not actionable under the Act. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005). In so holding, the *Avery* court included the following quote:

> " 'What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. See *Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings*, 268 Ill. App. 3d 433, 437-38 (1995); *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994). *We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.*' " *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000).' " (Emphasis added.) *Id.* at 169.

¶ 32　　It can be argued that the failure of any of the defendants to issue a refund to LaForte consistent with the posted policy was inexcusable and the monetary award just. But the equitable nature of the award cannot sustain the judgment when the evidence presented did not support the sole legal theory upon which this case proceeded. Under the circumstances of this

case, we hold that the manifest weight of the evidence clearly shows that the circuit court erred when it found Expedia liable under a common-law fraud theory.

¶ 33 Our resolution of the first issue raised by Expedia on appeal obviates the need to address its additional argument that the circuit court erred when it awarded punitive damages.

¶ 34                                    III. CONCLUSION

¶ 35 The judgment of the circuit court of Du Page County is reversed.

¶ 36 Reversed.